NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONNA WRIGHT,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | CIVIL ACTION NO. 15-6217 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

## INTRODUCTION

Plaintiff, Donna Wright ("Wright"), seeks review of the final decision of Defendant, the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. (Dkt. 1; see also dkt. 6-5 at 2.)[1] The Commissioner asks the Court to affirm the final decision. (Dkt. 17.) The Court, for the reasons stated herein, will affirm the final decision of the Commissioner.

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by referring to the docket entry numbers by the designation of "dkt." Pincites reference ECF pagination.

**DISCUSSION**

**I.      FACTUAL HISTORY**

   **A.      Employment History and Disability**

Wright is a high school graduate who "attended special education classes from the 4th grade until the 12th grade[.]" (Dkt. 14 at 6.)[2] She "worked as an assembler/solderer at a medical factory from January 1994 to January 1997 and from January 2003 to June 2011[.]" (Id.) In that capacity, she was "required … to sit for 8 hours, use tools, and handle small objects for 8 hours[.]" (Id.) Wright "also worked as a braider of catheters at a medical factory from March 2001 to December 2002[.]" (Id.) That position required her to: (1) "stand for 8 hours"; and (2) "stoop, kneel, crouch, and handle, grab, and grasp big objects, and lift upwards of 100 lbs[.]" (Id.)

Wright was diagnosed with breast cancer in June 2011. (Id.) She underwent a mastectomy of the right breast on June 17, 2011, and a lumpectomy on the left breast on October 10, 2013. (Id.) Wright "was also diagnosed with biliary cirrhosis, which is an auto-immune disease[.]" (Id.) The biliary cirrhosis caused Wright to experience pain, itching, and fatigue. (Id.) A physician also treated Wright for depression, rheumatoid arthritis, neuropathy, muscle weakness, and myalgia. (Id. at 6–7.)

   **B.      Consultative Examination**

A consultative examiner for the Social Security Administration ("SSA"), Dr. Dilbagh Singh ("Dr. Singh"), examined Wright on September 25, 2012. (Id. at 7.)

---

[2] The Court, for ease of reference, will cite to the papers submitted by the parties. When necessary, the Court will cite to the Administrative Record, filed at dkt. 6 through dkt. 6-8.

2

Wright reported the following ailments to Dr. Singh: (1) pain in her joints, ankles, toes, knees, and shoulders for one year; and (2) numbness in her right chest and upper right extremity.  (Id.)  Dr. Singh, upon completing a physical examination, noted that Wright's "right-sided chest wall around the surgery area was sensitive to touch, and there was some lymphedema noted on the right axillary fold of the right upper extremity and right chest wall[.]"  (Id.)  Dr. Singh did not provide any opinion as to Wright's residual functional capacity, which measures the "ability to do physical and mental work activities on a sustained basis despite limitations from her impairments."  (Id.; see also dkt. 6-2 at 13.)

        C.    **Treating Physician**

Wright's treating physician, Dr. Jason Tronetti ("Dr. Tronetti"), provided an assessment with respect to Wright's functional limitations on April 17, 2013.  (Dkt. 6-8 at 53–58.)  Dr. Tronetti opined that Wright experienced pain that was exacerbated by changing weather, fatigue, movement or overuse, stress, cold, and static position.  (Id. at 54.)  With respect to employment restrictions, Dr. Tronetti opined that Wright would: (1) be limited to sitting and standing or walking for less than 2 hours each in an 8 hour day; (2) require a job that permits "shifting positions at will"; and (3) be limited to lifting less than 10 pounds on a rare basis.  (Id. at 56–57.)

## II.    PROCEDURAL HISTORY

        A.    **Application for DIB and Internal Medical Review**

Wright, alleging that she was disabled, filed an application for DIB (hereinafter "the Application") on June 25, 2012.  (Dkt. 6-5 at 2.)  The Application alleged that she

3

was unable to work since the onset of her disabling condition on June 6, 2011. (Id.)

A state agency psychologist, Erin Urbanowicz, Psy.D. ("Dr. Urbanowicz"), reviewed Wright's application for DIB on October 17, 2012. (Dkt. 6-3 at 2–7.) Dr. Urbanowicz opined that Wright's mental health impairment related to depression was "non-severe[,]" and she noted that Wright had "not received treatment from a mental health professional." (Id. at 6–7.) According to Dr. Urbanowicz, the non-severe mental health impairment presented the following restrictions and difficulties of a mild degree:

**Restriction of Activities of Daily Living:** Mild

**Difficulties in Maintaining Social Functioning:** Mild

**Difficulties in Maintaining Concentration, Persistence or Pace:** Mild

(Id. at 7.)

A Single Decision Maker, Melissa L. Phillips ("SDM Phillips") reviewed the Application on December 11, 2012 to determine Wright's residual functional capacity ("RFC"). (Id. at 8–11.) SDM Phillips noted that Wright reported: (1) "no problems with personal care"; and (2) that she was "able to shop in stores and complete light housework." (Id. at 8.) With respect to Wright's RFC, SDM Phillips stated that Wright would be able to: (1) lift no more than 20 lbs. on an occasional basis and no more than 10 lbs. on a frequent basis; and (2) sit, stand, or walk 6 hours of an 8 hour workday. (Id. at 8–9.) SDM Phillips also opined that Wright would experience exertional limitations with respect to her right upper extremity. (Id. at 9.)

SDM Phillips conducted a vocational factor assessment, which analyzes whether a disability claimant is able to perform past relevant work, on December 11, 2012. (Id. at

4

10–11.)  A vocational factor assessment applies the RFC to determine whether, "based on all the relevant evidence," a claimant is able to perform work activities as previously performed.  (Id. at 11.)  SDM Phillips, noting as follows, concluded that Wright was able to perform past relevant work:

> The evidence shows that the individual has some limitations in the performance of certain work activities; however, these limitations would not prevent the individual from performing past relevant work ….

(Id. at 11.)

Based upon the above analysis, SDM Phillips determined that Wright was not disabled, and the SSA denied the Application on December 11, 2012.  (Id.)[3]  Thereafter, Wright filed a request for a hearing before an SSA administrative law judge ("ALJ") on December 24, 2012.  (Dkt. 6-2 at 12.)

### B.    ALJ Hearing and Decision

The ALJ held a video hearing on March 26, 2014.  (Id.)  Wright testified at that hearing, wherein she was represented by counsel.  (Id.)  The ALJ asked Wright to describe her experience as a solderer, and the Court provides the relevant testimony below:

> Q    Okay.  And then how did you do the job?  I mean, were you sitting or standing or moving around or – you know, what was your workday like?
>
> A    Sitting and moving around

---

[3] Another medical consultant for SSA, Dr. Lewis Cylus ("Dr. Cylus"), reviewed the Application on March 5, 2012.  (Dkt. 6-8 at 44–51.)  Dr. Cylus opined, inter alia, that Wright could "[s]tand and/or walk (with normal breaks)" and "[s]it (with normal breaks)" for "about 6 hours in an 8-hour workday."  (Id. at 45.)

> Q   Well, can you describe it? I mean, how would you – you know, how much would you be sitting or how much would you be moving around?
>
> A   I don't know. I don't know. Like, I don't know how to answer that. I'm not sure. I don't know. I got up. I was able to – up and down whenever I felt like it, I guess. If I needed to get a drink or use the bathroom or – I had my own freedom to do – just as long as I got some work done.

(Id. at 42–43.)

When the ALJ asked Wright if she could return to her position as a solderer, she responded "I don't think there's such a place that lets you have that much freedom anymore." (Id. at 43.)

The ALJ issued an unfavorable decision (hereinafter "the ALJ Decision") on May 2, 2014. (Id. at 12–49.) The ALJ Decision found, inter alia, that:

(1)   [Wright] has the following severe impairments: history of bilateral breast cancer with mastectomy on the right and lumpectomy on the left and biliary cirrhosis[;]

(2)   [Wright's] alleged fibromyalgia is a non-medically determinable impairment[;]

(3)   [Wright's] medically determinable mental impairment of depression does not cause more than [a] minimal limitation in … [her] ability to perform basic mental work activities and is therefore nonsevere[;] and

(4)   [Wright] has the [RFC] to perform sedentary work … except … [she] must be able to change position at will.

(Id. at 14–17.)

The ALJ, based on the above conclusions, found that Wright was "capable of performing past relevant work as a solderer." (Id. at 19.) The ALJ, with respect to Wright's duties as a solderer, found that Wright: (1) "performed at the sedentary level";

6

and (2) "does not exceed the exertional level of the [RFC] …." (Id.)  Thus, the ALJ concluded that Wright was "able to return to her past relevant work."  (Id.)[4]

Wright sought review of the ALJ Decision by the SSA Appeals Council ("Appeals Council") on May 16, 2014.  (Id. at 8.)  The Appeals Council denied Wright's request for review, and informed Wright that the ALJ Decision was the final decision of the Commissioner, on July 21, 2015.  (Id.)  Wright timely filed a complaint before this Court on August 14, 2015 seeking review of the ALJ Decision.  (Dkt. 1.)  The Court will summarize the applicable legal standards and address the arguments of the parties below.

### III. LEGAL STANDARDS

#### A. Framework

A claimant seeking DIB generally bears the burden of proving that he or she was "disabled" during the period for which benefits are sought.  20 C.F.R. § 416.912(a).  The Social Security Regulations establish a five-step sequential evaluation to be used in adjudicating whether an individual is disabled for the purposes of the SSA.  20 C.F.R. § 416.920(a).  Those steps are as follows:

---

[4] The ALJ Decision stated the following with respect to step five of the sequential analysis, discussed infra Sec.III.A:

> In the alternative, even if the case went to Step 5, the claimant would likely not be found disabled.  The rules … take administrative notice that there are approximately 200 separate unskilled sedentary occupations, each representing numerous jobs, in the national economy.  Therefore, even though 'sedentary work' represents a significantly restricted range of work, this range in itself is not so prohibitively restricted as to negate work capability for substantial gainful activity in all individuals.

(Dkt. 6-2 at 19.)

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled ....
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled ....
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled ....
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled ....
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled ....

Id.

"Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairments." Pearson v. Barnhart, 380 F.Supp.2d 496, 505 (D.N.J. 2005) (internal citation omitted). As to the fourth and fifth steps of the analysis, the claimant must "first demonstrate that he is unable to return to his former job because of physical or mental impairments." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). If the claimant satisfies this requirement, the burden shifts to the Commissioner to show that, based on the claimant's RFC and vocational factors — i.e.,

"age, education and work experience" — the claimant can perform "some other kind of substantial gainful employment" in the national economy. Id.

### B. Standard of Review

The Court has jurisdiction to review the ALJ Decision, but the review is limited. 42 U.S.C. § 405(g). The Court has plenary review of legal issues. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). But the Court may only review the ALJ's findings of fact to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); Schaudeck, 181 F.3d at 431. "Substantial evidence," as defined in this context, is less than a preponderance of the evidence but "more than a mere scintilla"; it is such evidence "as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted) (internal quotations omitted).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (internal citation omitted). The Court will not set aside the ALJ Decision "if it is supported by substantial evidence, even if we would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Nevertheless, the Court "retain[s] a responsibility to scrutinize the entire record[.]" Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

A decision of an ALJ must provide "sufficient development of the record and explanation of findings to permit meaningful review." Jones, 364 F.3d at 505. The ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," and the ALJ need not reference each and every treatment notation with

9

particularity. Id.; see also Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). But "[w]here competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence and explain a rejection of the evidence." Schaudeck, 181 F.3d at 435 (internal citation omitted). The Court may not find that a decision of an ALJ is supported by substantial evidence unless the ALJ has analyzed the evidence and sufficiently explained the weight given to probative exhibits. Bordes v. Comm'r of Soc. Sec., 235 Fed.Appx. 853, 861 (3d Cir. 2007).

## IV. APPLICATION OF LEGAL STANDARD

The Court has reviewed the Administrative Record, the ALJ Decision, and the papers submitted by the parties, and will decide the motion pursuant to Local Rule 78.1(b). (Dkt. 6–dkt. 6-8; dkt. 14; dkt. 17; dkt. 18; dkt. 19; dkt. 19-1; dkt. 20; dkt. 21.) The Court will consider the arguments of the parties and provide its analysis below.

### A. Wright's Arguments

Wright argues that "the ALJ's finding[s] at step 4 of the sequential analysis are inherently flawed in this case." (Dkt. 14 at 9.) According to Wright, the ALJ's analysis with respect to step 4 was inadequate as failing to "establish the demands of … [her] past jobs … as [she] actually performed them or as the jobs are generally performed in the national economy." (Id.)

Wright argues that the ALJ erred in finding that she could perform work as a solderer as she previously performed in that capacity. (Id. at 10.) Wright, in support of that argument, contends that as a solderer, she was required "to sit 8 hours per day[.]"

10

(Id.)[5] Wright also argues that the ALJ's finding is inconsistent with Dr. Cylus' medical review, wherein he opined that Wright would be limited to standing or walking, or, alternately, sitting for 6 hours of an 8 hour workday. (Id.) See also supra n.3. Thus, based upon her characterization of her past experience as a solderer and the review by Dr. Cylus, Wright submits that "[t]he ALJ failed to closely scrutinize" how she performed work as a solderer, "and thus error occurred." (Id.)[6]

Wright presumes that the Court will find that the ALJ erred at step 4, and contends that "the evaluation moves to Step 5, where the burden shifts to the Commissioner to show that the claimant is able to adjust to other work, in light of her age, education and work experience ….." (Id. at 11–12.) With respect to step 5, Wright argues that the ALJ erred in providing the analysis discussed supra n.4 by failing to consider: (1) the opinion of a vocational expert; and (2) Wright's "limitations in terms of social functioning or concentration, persistence, or pace[.]" (Id. at 11–18.)

B. The Commissioner's Arguments

The Commissioner opposes the appeal and argues that the ALJ corrected denied Wright's application for DIB. (Dkt. 17 at 4.) The Commissioner, in support of that

---

[5] Wright also objects to the ALJ Decision on the ground that the ALJ failed to call a vocational expert at the hearing. (Dkt. 14 at 11.)

[6] Wright raises a new argument in her reply brief, wherein she argues that remand is required because the ALJ failed to conduct a detailed review of the physical and mental demands of her former employment. (See generally dkt. 18.) The Court will not consider that newly-raised argument here. United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005); Aiellos v. Zisa, No. 09-3076, 2009 WL 3486301, at *1 (D.N.J. Oct. 20, 2009) ("It is hornbook law that arguments raised for the first time in a reply brief are waived[.]").

11

argument, contends that Wright did not meet the definition of disability from June 6, 2011 through May 2, 2014.  (Id.)

The Commissioner, with respect to step four, argues that the ALJ properly found that Wright could return to work as a solderer as she previously performed work in that position.  (Dkt. 17 at 8–11.)  The Commissioner points to Wright's testimony, wherein she stated that she was "able to – [move] up and down whenever I felt like it …" to support the argument that her former job "as actually performed allowed for a sit/stand option at will."  (Id. at 8.)   Based upon that testimony, the Commissioner concludes that Wright "had a sit/stand option in her former job as a solderer and could therefore sit for 6 hours and stand for 2 hours if she so chose."  (Id.)  Accordingly, the Commissioner concludes that Wright failed to meet "her burden of showing that she was unable to perform her past relevant work as that work was actually performed."  (Id. at 10–11.)[7]

### C.    Analysis

The Court concludes that the ALJ Decision is supported by substantial evidence.  The Court rejects Wright's argument that the record indicates that she was required to sit for 8 hours per day as a solderer.  See supra Sec.IV.A.  Notably, Wright's own testimony – wherein she stated she "was able to – up and down whenever I felt like it, I guess[,]" – contradicts that argument.  See supra Sec.II.A.2.  The Court finds that, at the very least,

---

[7] The Commissioner, with respect to the sequential analysis, argues that because the ALJ found that Wright was not disabled at step four, the ALJ was not required to proceed to step five.  (Dkt. 17 at 11.)  Thus, the Commissioner concludes that "regardless of whether the ALJ erred in his step five determination, the ALJ's determination is supported by substantial evidence and … should be affirmed."  (Id.)

12

Wright's testimony provided the ALJ with sufficient evidence to conclude that Wright's past job did "not exceed the exertional level of [her] residual functional capacity … nor … affect[] … the additional limitations included in the residual functional capacity." (Dkt. 6-2 at 19.)[8]  Thus, the Court finds that Wright failed to meet her burden at step four of demonstrating that she could not return to her past relevant work in the manner that she previously performed it.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Court also rejects Wright's arguments regarding the ALJ's analysis at step five as misguided.  See supra Sec.IV.A.  The ALJ Decision found that Wright was not disabled at step four of the sequential analysis, and thus, the ALJ was not required to proceed to step five.  See supra Sec.II.A.2.  See also 20 C.F.R. 404.1520(a)(4) ("If we can find that you are disabled or not at a step, we make our determination or decision and we do not go on to the next step.")  The ALJ's additional statements regarding step 5, discussed supra n.4, were extraneous to the dispositive ruling made at step 4.  Thus, because the ALJ's analysis at step 5 had no bearing on the ruling at issue here, the Court need not consider Wright's arguments concerning that step.

The Court, having reviewed the ALJ Decision and the Administrative Record, concludes that the ALJ Decision is supported by substantial evidence, and a remand for further assessment is not warranted.  Accordingly, the Court will affirm the decision of the Commissioner.

---

[8] The Court rejects Wright's argument that the ALJ erred by failing to consider the opinion of a vocational expert at step 4 of the analysis as unsupported by legal authority.  (Dkt. 14 at 11.)

13

## CONCLUSION

The Court, for the reasons discussed above, will affirm the final decision of the Commissioner. The Court will issue an appropriate order.

                     s/ Mary L. Cooper
                     **MARY L. COOPER**
                     United States District Judge

**Dated:** September 16, 2016